UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------X
                                 :

CHARLIE FLOW,                         :

                         :

               Petitioner, :       14 Civ. 3513 (KPF) (JCF)

                         :

            v.                  :       OPINION AND ORDER

                         :       ADOPTING REPORT AND

THOMAS LaVALLEY, *Superintendent*,    :       <u>RECOMMENDATION</u>

                         :

              Respondent. :

                         :
---------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

       Petitioner Charlie Flow, who is proceeding *pro se* and is currently

incarcerated at the Clinton Correctional Facility in Dannemora, New York, filed

a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 24,

2014 (the "Petition"), against Respondent Thomas LaValley, the Superintendent

of Clinton Correctional Facility.  Petitioner seeks review of his New York State

Supreme Court conviction for four counts of robbery in the first degree and one

count of robbery in the third degree.  Pursuant to a referral from this Court,

United States Magistrate Judge James C. Francis IV issued a Report and

Recommendation dated January 29, 2015 (the "Report"), recommending that

the Petition be denied.  The Court has examined both the Report and

Petitioner's February 10, 2015 Objection to that Report (the "Objection"), and

finds that the Report should be adopted in full.  Accordingly, the Petition is

denied.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: <u>September 22, 2015</u>

## BACKGROUND

The facts and procedural history leading up to the Petition are set forth in the Report. (*See* Report 1-16 (Dkt. #18)). Nonetheless, a brief summary of the relevant facts is useful to this Court's analysis.

Petitioner was arrested on October 29, 2008, and charged with offenses stemming from five bank robberies that took place between October 16 and 28, 2008. (Report 2-6). The People's evidence at trial established the following: On October 16, 2008, the first of the five incidents, an adult male found at trial to be Petitioner robbed the teller at a Capital One Bank branch in midtown Manhattan using a demand note that said: "Give me your hundreds and fifties. I have a gun. And if you give me your money no one will get hurt." (*Id.* at 2). The robber put his hand in his sweatshirt pocket and then pointed his concealed hand straight ahead. (State Court Trial Transcript ("Tr.") 125 (Dkt. #11-3)). The teller believed the perpetrator had a gun. (*Id.*). The teller gave him $653 as well as a security dye pack, which the man dropped as he exited the bank. (Report 2).[1]

The remaining four robberies, which occurred at different Wachovia Bank branches throughout Manhattan, followed a similar pattern: a man approached a teller, indicated that he had a gun, made a corroborative gesture with his hand while it was obscured within his pocket, and asked the teller to

---

[1]    One of the tellers robbed on October 22, 2008 explained to the jury that a dye pack was a device designed to look like a bundle of currency; the device would explode if the person carrying it crossed a certain threshold at the bank. (State Court Trial Transcript ("Tr.") 45, 52 (Dkt. #11-3)).

give him only bills in high denominations.  (Report 3-6).  During four of the five robberies, the man handed the teller a note, which said he had a gun and demanded money (*see id.* at 2-6, 7); during the fifth robbery, the man simply spoke to the teller, stating that he had a gun and wanted "all the 100s, 50s, and 20s" (*see id.* at 5, 7).

Notably, two robberies occurred on October 22, 2008.  (Report 4-5). During the first robbery, a dye pack exploded when the perpetrator received the money.  (*Id.*).  The teller present during the second robbery testified at trial that she noticed the perpetrator had red dye on his hands (which, in her opinion, indicated that he had robbed another bank earlier that day).  (*Id.*).

On October 28, 2008, police officers found a fingerprint on a demand note recovered from one of the robberies that matched Flow's known prints. (Report 7-8).[2]  Flow — who was on parole at the time — was arrested on October 29, 2008.  (*Id.* at 6-8).  Police officers conducted five lineups with tellers from four of the affected banks.[3]  Prior to viewing the lineups, the five witnesses waited together in a waiting room for approximately thirty minutes without police supervision.  (*Id.* at 8).  Each of the witnesses ultimately identified Petitioner as the robber.  (*Id.*).

---

[2]   The Report mistakenly lists this date as occurring in 2009, but the correct date is clear from context.

[3]   Officers conducted lineups with two tellers from the October 21, 2008 robbery; they did not conduct a lineup with a witness to the October 16, 2008 robbery.  (*See* Report 8). The teller from the October 16, 2008 robbery later viewed a photographic array and identified Petitioner.  (*Id.*).  However, this identification was excluded from evidence at trial.  (*Id.*).

3

On August 3, 4, and 6, 2009, Justice Richard Carruthers of the New York State Supreme Court, New York County, held a *Wade* hearing on Petitioner's motion to suppress several lineup identifications.  (Report 6).[4] After reviewing photographs from the lineups, Justice Carruthers denied Petitioner's motion to suppress the identifications.  (*Id.* at 8).  The Court found that the process "was fair both in terms of the composition of the lineup and . . . the manner in which the lineup was conducted."  (*Id.*).

During trial, the prosecution presented evidence from eyewitnesses, a handwriting analyst (who opined as to the similarities in the handwriting appearing on the demand notes), and a fingerprint expert who testified that fingerprints found on one of the demand notes belonged to Flow.  (Report 8-10). Eyewitnesses to the first October 22, 2008 robbery and the October 28, 2008 robbery made in-court identifications of Petitioner.  (*Id.* at 11).  The out-of-court identifications of Petitioner made during the lineups observed by witnesses to the October 21, 2008 and the second October 22, 2008 robberies were also introduced at trial.  (*Id.* at 11-12).  However, there was no eyewitness identification of Petitioner as the perpetrator of the October 16, 2008 robbery. (*Id.* at 11).

One of the eyewitnesses testified at trial that she and the other tellers who went to the precinct to view the lineup "talked about what had happened"

---

[4]     During a *Wade* hearing, the court determines whether an identification of a criminal defendant resulted from an impermissibly suggestive lineup.  *See United States* v. *Wade*, 388 U.S. 218 (1967); *People* v. *Boyer*, 6 N.Y.3d 427, 434 (2006) ("The purpose of a *Wade* hearing is to decide whether a pretrial identification of the defendant violated the defendant's constitutional rights and, if so, what the remedy should be.").

and "all discussed the experiences [they] had" before they viewed the lineup, while they were gathered in a waiting room. (Report 10). One of the other eyewitness tellers indicated that the tellers spoke generally about the description of the perpetrator while in the waiting room. (*Id.* at 11).

On two occasions, immediately after eyewitnesses testified regarding their conversations in the waiting room, counsel for Petitioner moved the trial court to reopen the *Wade* hearing. (Report 10-11). Counsel argued that having all of the witnesses in the same room prior to viewing the lineup created the possibility of a "suggestive interaction." (*Id.* at 10). The trial court denied each of these motions to reopen the *Wade* hearing. (*Id.* at 10-11).

In response to counsel's repeated motions to reopen the *Wade* hearing, the trial court acknowledged Petitioner's "standing objection" to the introduction of identifications from the lineups. (Tr. 289). The court also noted that its rulings did not preclude counsel from cross-examining the eyewitnesses, and ultimately arguing to the jury that the identifications should be given little weight in light of the conversations that took place in the waiting room:

> I think I have given you wide latitude to explore the conversations that took place in the waiting room between the various tellers who were about to view the lineup, to the extent that goes to the weight of the evidence and the identification in line with my ruling I will continue to give you that latitude.

(*Id.* at 290).

The jury convicted Petitioner on November 20, 2009, on four counts of robbery in the first degree and one count of robbery in the third degree. (Report 13).  Petitioner was sentenced on April 27, 2010, as a persistent violent felony offender, to four concurrent prison terms of 25 years to life for his convictions for robbery in the first degree, and a concurrent term of three and one half to seven years for robbery in the third degree.  (*Id.*).

Petitioner filed a motion with the trial court to set aside the verdict pursuant to New York Criminal Procedure Law § 330.30, on the basis that the court had erred in denying his midtrial motions to reopen the *Wade* hearing. (Report 13).  The court denied Petitioner's motion on February 25, 2010.  (*Id.* at 13-14).  In his direct appeal to the Appellate Division's First Department, Petitioner argued that his conviction was against the weight of the evidence, that the evidence at trial was legally insufficient, and that the trial court had abused its discretion and deprived him of a fair trial by denying his motion to reopen the *Wade* hearing.  (*Id.* at 14).  The First Department affirmed Petitioner's conviction on October 16, 2012.  *People* v. *Flow*, 952 N.Y.S.2d 178, 179 (1st Dep't 2012).  With respect to the specific issue of reopening the *Wade* hearing, the First Department held that

> The court properly declined to reopen the *Wade* hearing based on trial testimony about conversations between witnesses that occurred before the witnesses separately made lineup identifications.  This testimony could not have had any effect on the suppression issue.  The new information revealed at trial did not contradict any hearing testimony, and it went to the weight to be accorded the identifications rather than their admissibility.

6

*Id.* (citations omitted).  Petitioner's application to appeal that decision was denied by the New York Court of Appeals on February 25, 2013.  *People* v. *Flow*, 20 N.Y.3d 1061 (2013).

Petitioner timely filed his Petition, which, as liberally construed by Judge Francis, raises the same three issues Petitioner had raised in his motion to set aside the verdict and in his appeal.  (Report 15-16).  Specifically, Judge Francis construed the Petition to raise the following claims: (i) the evidence presented at trial was legally insufficient to support a verdict against Petitioner; (ii) the verdict was against the weight of the evidence; and (iii) the trial court abused its discretion and deprived Petitioner of a fair trial when it denied his request to reopen the *Wade* hearing.  (*Id.* at 16).

On January 29, 2015, Judge Francis issued the Report recommending that the Petition be denied in its entirety.  (Report 25-26).  Judge Francis explicitly warned Petitioner that failure to file timely objections would "preclude appellate review."  (*Id.* at 26).  On February 10, 2015, Petitioner filed his Objection.  (Dkt. #20).  In it, Petitioner agreed with the Report insofar as it concerned Petitioner's sufficiency of the evidence and weight of the evidence claims.  (*See id.* at 3).  With respect to Judge Francis's determination on "legal sufficiency," Petitioner indicated simply:  "Fails, no I agree."  (*Id.*).  With respect to Judge Francis's recommendation regarding the "weight of the evidence" claim, Petitioner made a similarly brief comment: "I agree."  (*Id.*).  With respect to Judge Francis's disposition of the claim relating to the failure of the trial court to reopen the *Wade* hearing, however, Petitioner lodged an objection.  (*Id.*

at 3-4).  In particular, Petitioner argued that the cases Judge Francis relied on were inapposite.  (*Id.*).

## THE STANDARD OF REVIEW

A court may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Grassia* v. *Scully*, 892 F.2d 16, 19 (2d Cir. 1989).  A court may accept those portions of a report to which no specific, written objection is made, as long as the factual and legal bases supporting the findings are not clearly erroneous.  *See Ramirez* v. *United States*, 898 F. Supp. 2d 659, 663 (S.D.N.Y. 2012).  A magistrate judge's decision is clearly erroneous only if the district court is "'left with the definite and firm conviction that a mistake has been committed.'"  *Easley* v. *Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States* v. *U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

A party's failure to object to a report and recommendation, after receiving clear notice of the consequences of such a failure, operates as a waiver of the party's right both to object to the report and recommendation and to obtain appellate review.  *See Frank* v. *Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *United States* v. *Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) ("We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object."); *see also Thomas* v. *Arn*, 474 U.S. 140, 155 (1985) (holding that Courts of Appeals

may adopt rules regarding waivers).  This rule applies to both *pro se* and counseled litigants.  *See Frank*, 968 F.2d at 300.

By contrast, to the extent that a petitioner makes specific objections to a magistrate judge's findings, the reviewing court must undertake a *de novo* review of the objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *United States* v. *Male Juvenile*, 121 F.3d at 38.  Although *pro se* filings are read liberally and interpreted "to raise the strongest arguments that they suggest," *Pabon* v. *Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal quotation marks omitted), "even a *pro se* party's objections . . . must be specific and clearly aimed at particular findings in the magistrate's proposal[]" *DiPilato* v. *7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citation omitted); *see also Bowens* v. *Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 59 (E.D.N.Y. 2008) ("To allow a party to trigger full *de novo* review by the district judge on the basis of [conclusory] objections . . . would make a mockery of the role of magistrate judges in fulfilling their important and well-recognized responsibilities.").

## DISCUSSION

Petitioner asserts three claims for habeas relief: (i) his verdict was against the weight of the evidence; (ii) there was insufficient evidence to support his conviction; and (iii) the trial court abused its discretion and deprived him of a fair trial by failing to reopen the *Wade* hearing.  While the Court reviews Judge Francis's conclusions regarding Petitioner's first and second claims for clear error, as Petitioner made no objections with respect to the Report's disposition of those claims, it reviews the third claim, to which Petitioner has objected, *de*

*novo.*  As detailed in the remainder of this section, Judge Francis thoroughly and carefully considered each claim raised in the Petition, and properly determined that they lacked merit.

## A.     Weight of the Evidence

Judge Francis disposed of Petitioner's claim that the jury weighed the evidence improperly by noting that such a claim relates to "'an error of state law, for which habeas review is not available.'"  (Report 23 (quoting *Garrett* v. *Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006))).  Indeed, "'it is well settled that upon habeas corpus the court will not weigh the evidence.'"  *Gunter* v. *Lee*, No. 12 Civ. 8331 (VEC), 2014 WL 5430565, at *2 (S.D.N.Y. Oct. 24, 2014) (quoting *Hyde* v. *Shine*, 199 U.S. 62, 84 (1905)); *accord McKinnon* v. *Superintendent, Great Meadow Corr. Fac.*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order).  The Report's determination that Petitioner's weight of the evidence claim fails to entitle him to habeas relief is free from error.

## B.     Sufficiency of the Evidence

Petitioner next asserts that the evidence was legally insufficient to support his convictions for robbery in the first degree and robbery in the third degree.  In this regard, Petitioner relies on the fact that there was no in-court identification of him as the perpetrator of the October 16, 2008 robbery, that the out-of-court identifications of him as the perpetrator of two of the other robberies were unreliable, and that all of the encounters were so brief as to call into question the tellers' ability to identify him accurately.  (Report 21-22). With respect to the October 16, 2008 robbery, Judge Francis correctly noted

10

that there was ample other evidence from which the jury could have determined that the October 16, 2008 robbery was part of the same pattern of robberies in which Petitioner had been implicated through eyewitness and fingerprint evidence.  (*Id.* at 21 (noting the similarities of handwriting on the demand notes, the perpetrator's hand gestures, and his threats about possessing a gun during the other robberies)).  With respect to the lack of reliability of the other identifications, Judge Francis correctly noted that the jury was entitled to make its own credibility determinations regarding the witnesses, and to rely on any parts of the witnesses' testimony that it deemed reliable.  (Report 22).  Accordingly, the Court finds no clear error in the Report's recommendation with respect to the sufficiency of the evidence.

## C.      Failure to Reopen the *Wade* Hearing

Finally, Judge Francis recommended dismissal of the portion of the Petition relating to the trial court's failure to reopen the *Wade* hearing.  (*See* Report 24-25).  Petitioner objects to this portion of the Report (*see* Objection 3-4), and the Court therefore reviews this claim *de novo*.

The Court begins by noting that Petitioner does not, because he cannot, claim that the state court failed to conduct a pre-trial *Wade* hearing to explore the issue of whether the lineup procedure was unduly suggestive, or that his trial counsel was ineffective in failing to move to reopen the *Wade* hearing during trial.  Such claims could, under certain circumstances, be cognizable in a federal habeas petition.  *See, e.g.*, *Raheem* v. *Kelly*, 257 F.3d 122, 133 (2d Cir. 2001) ("When the defendant objects to identification testimony to be given

11

by a witness who has identified him prior to trial, a sequential inquiry is
required in order to determine whether either the prior identification or an in-
court identification of the defendant at trial is admissible."); *Saltys* v. *Adams*,
465 F.2d 1023, 1029 (2d Cir. 1972) ("We cannot see what conceivable trial
strategy was followed in, or what tactical advantage could obtain ... from,
failing to object — we might add with vigor — on *Wade* ... grounds to the
admission of the identification testimony."); *cf. Watkins* v. *Sowders*, 449 U.S.
341, 349 (1981) ("A judicial determination outside the presence of the jury of
the admissibility of identification evidence may often be advisable.  In some
circumstances, not presented here, such a determination may be
constitutionally necessary.  But it does not follow that the Constitution
requires a *per se* rule compelling such a procedure in every case.").  In point of
fact, a pre-trial *Wade* hearing was held, and counsel made two mid-trial
motions to reopen the *Wade* hearing after witnesses testified regarding the
circumstances surrounding their out-of-court identification of Petitioner.
Accordingly, Petitioner argues that it was the trial court's failure to reopen the
*Wade* hearing that constituted a violation of his due process rights.
(Objection 3-4).

New York law provides that a court "*may*" — but is not required to —
reopen a *Wade* hearing if "the court is satisfied . . . that additional pertinent
facts have been discovered by the defendant which he could not have
discovered with reasonable diligence before [trial]."  N.Y. Crim. Proc. Law
§ 710.40(4) (emphasis added).  Because a court's ruling on a motion to reopen

a *Wade* hearing is a "discretionary decision under state law, [it] is . . . not subject to federal habeas review" unless the ruling is "so egregious that it rises to the level of a constitutional deprivation." S*mith* v. *Graham*, No. 10 Civ. 3450 (JPO) (THK), 2012 WL 2428913, at *11 (S.D.N.Y. May 7, 2012) (internal quotation marks omitted), *report and recommendation adopted*, 2012 WL 2435732 (S.D.N.Y. June 27, 2012); *Andrews* v. *LeClaire*, 709 F. Supp. 2d 269, 279 (S.D.N.Y. 2010); *Garcia* v. *Kuhlmann*, 897 F. Supp. 728, 731 (S.D.N.Y. 1995) ("Insofar as [the denial of a *Wade* hearing] is a matter of state law, the general rule is that it is not reviewable on a habeas petition.").

In order to show that a violation of state law was so egregious that it rose to the level of a constitutional violation, a defendant must show that the error "'render[ed] [his] state trial fundamentally unfair'" or "created 'actual prejudice.'" *Andrews*, 709 F. Supp. 2d at 279 (quoting *Herring* v. *Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993)).

Upon a review of the record, the Court finds no evidence that the trial was unfair or that actual prejudice resulted from the denial of Petitioner's motions to reopen the *Wade* hearing. Significantly, the trial court made clear that Petitioner's counsel would have wide latitude to question the eyewitnesses during trial on the circumstances surrounding the lineup procedure, and Petitioner thus had (in addition to the initial *Wade* hearing) opportunities to challenge the out-of-court identifications during trial. *See, e.g.*, *Sanford* v. *Burge*, 334 F. Supp. 2d 289, 302 (E.D.N.Y. 2004) ("Even assuming that the state court should have granted counsel's request to question the identifying

witnesses at the *Wade* hearing, his due process rights were not violated since he was given an opportunity to do so at trial." (collecting cases)); *Garcia*, 897 F. Supp. at 730-31 ("Federal constitutional law does not warrant granting a habeas petition on the basis of denial of a pretrial hearing where Petitioner had the opportunity to cross-examine the witness on the identification issue and to argue in summation that there might have been a problem with the identification procedure."); *People* v. *Brown*, 67 N.Y.2d 555, 559 (1986) (concluding that "the trial court did not abuse its discretion in denying defendant's posttrial motion to reopen the *Wade* hearing" where the defendant "had the opportunity during the bench trial to cross-examine the identifying witness"). Accordingly, the Court concludes that the trial court's denial of Petitioner's motions to reopen the *Wade* hearing does not entitle him to habeas relief.

## CONCLUSION

For the foregoing reasons, the Report is adopted in full, and the Petition is DENIED. The Clerk of Court shall dismiss this Petition and close the case.

Since Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). Additionally, because Petitioner failed to object to two of the three claims raised in his Petition, after being warned of the consequences of failing to object, he has waived the right to challenge those portions of the Report on appeal. *See Mario* v. *P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002). Finally, pursuant to 28 U.S.C. § 1915(a)(3), the Court finds that any

appeal from this Order would not be taken in good faith; therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge* v. *United States,* 369 U.S. 438, 444-45 (1962).

      SO ORDERED.

Dated:     September 22, 2015
           New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

---

*A copy of this Opinion and Order was mailed by Chambers to:*

    Charlie Flow
    10A3812
    CLINTON CORRECTIONAL FACILITY
    1156 Rt. 374
    P.O. Box 2000
    Dannemora, NY 12929-2000